```
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA  )
                          )     CRIMINAL NO. 03-CR-10362-PBS
V.                        )
                          )
FABIAN A. RUIZ            )
```

## GOVERNMENT'S OPPOSITION TO DEFENDANT FABIAN A. RUIZ'S MOTION TO SUPPRESS EVIDENCE

### INTRODUCTION

The United States of America, through its undersigned attorneys, hereby opposes Defendant Fabian A. Ruiz's Motion To Suppress Evidence, namely the marijuana seized on October 22, 2003 and statements of Sugar and Stark. The Motion to Suppress should be denied for reasons including the following: (1) defendant lacks standing under the Fourth Amendment to suppress the evidence; (2) the attenuation between the seizure of the marijuana in the RV, the voluntary cooperation of co-defendants, and the controlled delivery of this marijuana to defendant Ruiz two days later, purges any possible taint from the initial stop; and (3) defendant has provided no legal authority supporting his contention that the Fifth Amendment Due Process clause applies to this case or that a violation exists. Thus, defendant Ruiz's Motion to Suppress Evidence should be denied.

### FACTS

On the afternoon of October 22, 2003, Deputy Sheriff Carmello Crivello stopped defendants Christopher R. Sugar ("Sugar") and Sean D. Stark ("Stark") who were traveling in a Recreational Vehicle ("RV") along highway I-44 in Phelps County, Missouri.  The facts are more fully described in the Court's June 24, 2004, memorandum and order.  Deputy Crivello followed the RV for approximately 1/2 mile during which time he observed the RV cross over into the right shoulder at least one time.  Deputy Crivello then initiated a traffic stop on the RV.  Crivello was suspicious that the RV may contain narcotics.  Crivello ran a records check on Sugar and Stark and called in a canine unit.  The records check came back clean.  The RV was registered to Robert L. Ireland in Tucson, Arizona.  The canine unit arrived about ten to fifteen minutes after the clean records check was returned and about twenty minutes after Crivello initially stopped the RV.  The canine alerted and 376.9 pounds of marijuana was found in the closet of the RV.

On October 22, 2004, Special Agent Leslee Tate in Missouri read Sugar and Stark their Miranda Rights and the two signed Statement of Rights Forms, waiving their Miranda Rights.  The two agreed to cooperate and conduct a controlled delivery to the intended recipients in Massachusetts.  Stark made consensually recorded conversations to the recipient in Massachusetts.

Two days later, on October 24, 2003, Sugar and Stark, accompanied by law enforcement, arrived in Massachusetts with the

RV and marijuana. Special Agent David O'Neill in Massachusetts again read Sugar and Stark their Miranda Rights. Both Sugar and Stark again admitted that they had been transporting the marijuana in the RV through Missouri to Massachusetts and were to be paid. The two agreed to continue their cooperation. They conducted a controlled delivery of the marijuana to defendants Teague, Fabian Ruiz, and Anibal Torres. The three were subsequently arrested.

**ARGUMENT**

**A. Defendant Ruiz Has No Standing To Suppress the Evidence**

The Supreme Court has clearly stated that "the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Bouffard, 917 F.2d 673, 675-76 (1st Cir. 1990) (citing Rakas v. Illinois, 439 U.S. 128, 131 (1990)). Defendant Ruiz has failed to satisfy this burden as set forth below.

> The Fourth Amendment's prohibition against unreasonable searches and seizures extends only to protect those places and interest in which the accused can be characterized as having a legitimate expectation of privacy. . . . Demonstration of such an expectation is a threshold standing requirement, and analysis cannot proceed further without its establishment. . . . The burden of persuasion is unquestionably upon the defendant.

United States v. Cruz Jimenez, 894 F.2d 1, 5 (1st Cir. 1990).

As the Supreme Court held in Alderman v. United States, 394 U.S. 165, 171-72 (1969), "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by

those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."  "[O]wnership of a vehicle is largely irrelevant to the question of whether a given defendant has standing to challenge the stop of that vehicle."  <u>United States v. Powell</u>, 929 F.2d 1190, 1194 (6th Cir. 1991).

Thus, the threshold inquiry is whether or not defendant Ruiz had a legitimate expectation of privacy in the RV on October 22, 2004.  Even if defendant were able to show some vicarious ownership through the partnership agreement with Robert Ireland, defendant had no possessory interest at the time of the stop and certainly no legitimate expectation of privacy in this RV on October 22nd for reasons, including the following: (1) that he was not present in and was in fact thousands of miles away from the RV at the time of the stop; (2) that the RV was owned by Robert Ireland; (3) that the owner, Robert Ireland, and not defendant Ruiz had given Sean Stark permission to use the RV; (4) that defendant had only used the RV at best for a vacation and a brief residence and had not used the RV at all in the month of October; and (5) that Stark was using the RV for vacation and not any Link Trailer Repair purposes.

<u>Powell</u> is on point and dispositive for this case.  In <u>Powell</u>, as in the instant case, the pickup truck was driven not by the owner but by Maroda who was given permission to drive by the owner Powell.  929 F.2d at 1191-92.  The pickup truck was

pulled over for a motor vehicle violation that was later determined not to be supported by probable cause. Id. at 1194. The officer found marijuana in the truck and Maroda told agents that Powell was paying him to deliver the marijuana from Arizona to Wisconsin. Id. at 1192. A controlled delivery of the marijuana to Powell was conducted and he was subsequently arrested. Id. Powell later filed a motion to suppress all the evidence derived from the illegal stop. Id.

The Powell Court held that the defendant did not have standing to object to the stop. Id. at 1195-96. Although Powell owned the truck, the Court found that Powell gave his truck to Maroda not for a drive around the block but for a three-day, 2,000 mile journey and at the time of the stop Powell was over 1,000 miles from the stop. Id. at 1195. Moreover, the Court held that "since he was not at the scene of the stop at the time it occurred, his interest in using the highways undisturbed by random and intrusive police action and the anxiety it causes was not implicated by the search." Id. at 1196. See also United States v. Elmore, 304 F.3d 557, 560-61 (6th Cir. 2002) (holding defendant who partially paid for vehicle and who may be owner but was not present during stop had no expectation of privacy).

Defendant has provided no case remotely on point to the case at hand. Defendant assumes that the RV is in fact a home and has the expectation of a home when the seminal Supreme Court

case <u>California v. Carney</u>, 471 U.S. 386 (1985), has clearly held to the contrary. The <u>Carney</u> instant case involved a Dodge Mini Motor Home parked in a lot. The police found marijuana in plain view and in cupboards and the refrigerator of the motor home. <u>Id.</u> at 388. The police did not obtain a warrant or consent to search the motor home and thus the Court considered whether the automobile exception to the Fourth Amendment's warrant requirement applied. <u>Id.</u> The defendant argued that the vehicle was acting as a home and thus the heightened Fourth Amendment expectation of privacy in a home as opposed to an automobile applied. <u>Id.</u> at 393. The Supreme Court rejected this claim holding that the "reduced expectations of privacy" in a car comes from "the pervasive regulation of vehicles capable of traveling on the public highways." <u>Id.</u> at 392.

The Supreme Court noted that while the vehicle possessed some if not "many of the attributes of a home", the vehicle was operating in public places where it was subject to extensive regulation and inspection and the "vehicle was so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle." <u>Id.</u> at 393. The Supreme Court also maintained the importance of recognizing that "a motor home lends itself easily to use as an instrument of illicit drug traffic and other illegal activity." <u>Id.</u> at 394.

The RV in the instant case was objectively being used as a vehicle more than even in the <u>Carney</u> case, since Sugar and Stark

were actually driving it on the interstate during the day at the time of the search. The RV was thus subject to much regulation while being driven on the interstate as opposed to being parked in a lot as in <u>Carney</u> or in a motor home area. Defendant Ruiz has utterly failed to demonstrate that he had an expectation of privacy in the RV in October of 2003. The fact that the district court ruled that the initial stop as to Sugar and Stark violated their Fourth Amendment rights is irrelevant. It is questionable at best as to whether defendant has any ownership interest in the RV by virtue of the Partnership Agreement, as the RV does not appear to have been used for business purposes at all. The Partnership Agreement explicitly states that agreement is for the purpose of "operating various kinds of businesses", but the affidavit on its face is devoid of any indication that the RV is used for business. When the RV was stopped on October 22, 2003, Stark and Sugar were using the RV for vacation purposes, as the defendant concedes.

Moreover, Ruiz was not present during the illegal stop in Missouri. He was across the country in Massachusetts at the time and thus had no possessory or privacy interests in the RV or its contents at the time of the stop.

Furthermore, defendant admits that the permission note to use the RV is from Robert Ireland to Sean Stark. Noticeable absent is any permission note from Ruiz. Nor is there even assertion that Ruiz gave permission for Stark or Sugar to use

the RV.  This demonstrates Ruiz's lack of ownership or proprietary interest in the RV or any ability to exclude others from its use.

Ruiz can not simply assert an expectation of privacy in the RV by virtue of a vague partnership agreement and documents where his name neither appears as part-owner nor as a registered vehicle owner.  See Gomez, 770 F.2d 251, 254 (1st Cir. 1985)(holding that a defendant who leased an apartment but did not live there had no expectation of privacy since he could not prove his ability to exclude others from the residence); United States v. Evans, 629 F.Supp. 1544 (D.Conn. 1986) (holding that defendant who had keys to apartment but who did not live there had no expectation of privacy and lacked standing to suppress any evidence found therein).

Defendant has failed to show any legitimate expectation of privacy in the RV during the stop and thus his motion should be denied.

B.  **The Attenuation or Intervening Circumstances Dissipates any Initial Taint of the Seizure**

The attenuation doctrine provides that any tainted or poisoned evidence obtained as a result of an illegal search or seizure, "fruit of the poisonous tree", is freed of the taint when the causal chain has been sufficiently attenuated from the primary illegality by some intervening circumstances.  Thus, even if defendant Ruiz were found to have standing in the RV and the marijuana were to be suppressed as to him, the voluntary

statements of Sugar and Stark made to law enforcement on October 22nd and again on October 24th were sufficiently attenuated such that no taint remained.  See <u>United States v. Monti</u>, 557 F.2d 899 (1st Cir. 1997) (holding if any taint attached to defendant's statements, it was fully dissipated by the intervening time interval); <u>see also</u> <u>United States v. Johnson</u>, 121 F.3d 1141. 1143-1144 (8th Cir. 1997) (holding that although "very little time" passed between the illegal arrest and the confession, that defendant was read rights, had a waiver form signed, and attorney presence such that connection to illegal detention was severed);  <u>United States v. Bradley</u>, 922 F.2d 1290, 1296 (6th Cir. 1991) (overruled on other grounds) (holding evidence found in search of defendant's house two days after unlawful arrest of defendant in his home was not suppressible because taint of illegal arrest had sufficiently dissipated) <u>United States v. Seidman</u>, 156 F.3d. 542, 549-50 (4th Cir. 1998) (holding initial taint of alleged illegal entry was purged although very little time elapsed, because defendant consented to conversation and voluntarily closed door of apartment); <u>United States v. Ayres</u>, 725 F.2d 806, 809-11 (1st Cir. 1984) (holding statements later made at the police station after being read Miranda warnings were admissible because of sufficient attenuation from initially illegally obtained statements).

    After having received the Miranda warnings in Missouri and then two days later in Massachusetts, Sugar and Stark

voluntarily admitted to transporting the marijuana in the RV and agreed to conduct the controlled delivery to Teague and the others in Massachusetts.  This is a huge lapse in time between the initial seizure and the controlled delivery.  Moreover, Sugar and Stark's statements and actions were completely voluntary, such that any initial taint of the search of the RV has been purged.  Moreover, the Phelps County conduct consisting of a traffic violation that the Deputy believed at the time was proper, and a subsequent ten to fifteen minute delay until the narcotics canine arrived, was not a flagrant violation of official misconduct, as defendant alleges.  See Seidman, 156 F.3d at 550 (holding conduct did not rise to level of the "flagrancy and offensiveness" that militated toward suppression such as in Wong Sun in which six or seven officers broke open door, chased defendant, and handcuffed defendant).  Therefore, the Motion to Suppress should be denied.

**C.    Defendant Has Provided No Legal Authority Demonstrating That the Fifth Amendment Right to Due Process Applies or Has Been Violated**

The Fifth Amendment Due Process right guarantees that fundamental fairness is preserved in a criminal trial.  See Lisenba v. California, 314 U.S. 219, 236 (1941). ("In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.").  The defendant has provided absolutely no legal authority supporting

his contention that the Fifth Amendment Due Process Right applies or has been violated. Therefore, the Motion to Suppress should be denied.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Suppress Evidence should be denied.


Dated: October 7, 2004

                                        Respectfully Submitted,
                                        MICHAEL J. SULLIVAN
                                        United States Attorney


                                        By: _/s/ Cynthia W. Lie_
                                        CYNTHIA W. LIE
                                        ASSISTANT U.S. ATTORNEY