UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
v.                          )    Criminal No.: 03-CR-10362-PBS
                            )
FABIAN RUIZ                 )
_____)

RUIZ'S RESPONSE TO THIS COURT'S QUESTION
REGARDING FOURTH AMENDMENT STANDING

**Issue:** At the end of the hearing on the first day of Fabian Ruiz's Motion to Suppress this Court asked counsel to brief the issue of whether a defendant has standing for Fourth Amendment purposes to challenge the search of a closed container in a place co-owned by the defendant, when defendant was not present at the time of the search. The example this Court referenced is whether a defendant/owner of a vacation home, such as a ski house, who rents his home, maintains standing to assert Fourth Amendment rights following a search of a closet in the vacation home containing the owner's property while the home is occupied by renters.

**Answer: (A) Abandonment of the Motor Home Is One of the Issues.** In part, the answer to the court's question appears to be a function of whether the owner of a container[1] abandons it so as to relinquish his expectation of privacy. The test for abandonment "is whether an individual has retained any reasonable expectation of privacy in the object." *U.S. v. Rem,* 984 F. 2d 806, 810 (7th Cir. 1993). A defendant's "subjective intent is not determinative; rather, the court must make an objective

---

[1] A "container" is defined herein as a storage box, suitcase, briefcase, bag, closet or any other opaque receptacle to store goods or things.

1

determination based on the totality of the circumstances." *U.S. v. McClendon,* 86 Fed. Appx. 92, 2004 LEXIS 471 (6th Cir. 2004).

In *McClendon,* defendant's motion to suppress was granted even where police searched and confiscated a satchel from a window sill where the window was partially open and there was no window covering in an apartment that he illegally sublet. The court analyzed whether the defendant abandoned the satchel and held that placement of the satchel on the window sill did not constitute abandonment for Fourth Amendment purposes. There was no evidence that the defendant intended to abandon the satchel unlike the defendant in *U.S. v. Oswald,* 783 F.2d 663 (6th Cir. 1986) where defendant abandoned a suitcase full of cocaine when he left it in a car burning by the side of the road and failed to report the fire or claim the suitcase. The *McClendon* court reasoned that the "Fourth Amendment does not protect an individual's privacy only if he ensures that his possessions are placed beyond the grasping reach of his fellows." *Id.* Even if he does not place his possessions beyond another's reach, he still maintains an expectation of privacy in the container provided it is not abandoned.

**(B)  Actual Versus Constructive Possession.**

In *U.S. v. Dowler,* 1991 LEXIS 19049 (10th Cir. 1991) defendant's motion to suppress was granted upon a showing that the manager of the apartment building agreed, after tenant failed to pay rent, to store defendant's property until she could return to collect it. Although defendant did not directly deliver possession of her property to the apartment manager a bailment was created and the manager was obligated to take care of her property in the apartment storage area. The court held that she did not abandon her property and there was no evidence indicating that she could not retrieve or have access

to it. Even though the evidence also showed that she did not return to collect her property, the court determined that she had an expectation of privacy in the documents in the covered boxes in the apartment's storage area because she did not relinquish her rights to them. *Id.*

*Dowler* is similar to this case by analogy. Dowler owned the items in the boxes that the apartment manager stored on her behalf in the storage area of the apartment building much the same way that Stark stored the contents of the closet in the motor home on his and Ruiz's behalf. In *Dowler,* the apartment manager had *actual* possession of the boxes but defendant had *constructive* possession by virtue of the fact that she could retrieve the boxes at any point she wanted. In Ruiz, Stark had actual possession of the contents of the closet while Ruiz had constructive possession. Similarly, Ruiz could retrieve them at will and did not relinquish his rights to the property. The result in *Dowler* suppressing the contents of the box should be the same result here for the same reason.

### (C) Control of the Container.

A person has an expectation of privacy in his or her private containers and does not forfeit that right "merely because the container is located in a place that is not controlled exclusively by the container's owner." *U.S. v. Welch,* 4 F. 3d 761, 764 (9th Cir. 1993)(a person retained an expectation of privacy in her purse even though it was in trunk of a rental car). In *U.S. v. Fultz,* 146 F.3d 1102 (9th Cir. 1998), the court granted defendant's motion to suppress and held that a defendant had an expectation of privacy in a cardboard box in which his property was stored even though the box was in the garage of a house where he was staying after he was evicted from his apartment and was not

3

present at the time of the search. "Although certain types of containers – suitcases, valises, purses, and footlockers, for instance – do command high expectations of privacy, this does not mean that other types of containers in which people store their personal belongings command no expectation of privacy. The Fourth Amendment protects people from unreasonable searches." *Fultz,* 146 F. 3d 1102, 1105. The fact that Ruiz was not in the motor home when it was searched does not abrogate his expectation of privacy in the contents of the locked closet in the motor home.

In *U.S. v. Davis,* 332 F. 3d 1163 (9th Cir. 2003) defendant's motion to suppress was granted where police found a gym bag containing a shotgun under a bed in an apartment leased by defendant's girlfriend and her roommate. The search was conducted after the defendant's girlfriend's roommate gave consent to the search and while defendant was not present. The government argued that Davis did not have an expectation of privacy in the apartment because he was not a lessee. The court's focus was "not whether Davis had a legitimate expectation of privacy in the contents of the apartment generally, but whether he could reasonably believe that the contents of <u>his gym bag</u> would remain private." *Davis,* 332 F.3d at 1165. Citing *Fultz,* the court held that a person does not "forfeit that expectation of privacy merely because the container is located in a place that is not controlled exclusively by the container's owner." *Id.* The fact that defendant "stored his bag under a bed, even though the bed was not exclusively under his control, strongly supports our conclusion that his expectation of privacy in the bag was reasonable." *Id.* Like the defendant in *Davis,* Ruiz had a legitimate expectation that the contents of the locked closet in the motor home would remain private.

In *U.S. v. Mancini,* 8 F.3d 104 (1st Cir. 1993) an old (1987) appointment calendar belonging to the mayor of North Providence found by authorities in a box in the "archive attic" in the workplace was suppressed on Fourth Amendment grounds. The First Circuit considered the following factors to be relevant in the standing determination:

    (1) ownership, possession and/or control;

    (2) historical use of the property searched or thing seized;

    (3) ability to regulate access;

    (4) the totality of the surrounding circumstances;

    (5) the existence of a subjective anticipation of privacy; and

    (6) the objective reasonableness of such an expectancy under the facts of a given case.

*U.S. v. Mancini,* 8 F.3d 104 (1st Cir. 1993).

The Court's inquiry in *Mancini* is no different from the general test to determine a defendant's Fourth Amendment standing even though it is a workplace case. Whether defendant is on the property or whether 1000 miles away at the time of the search is irrelevant. Whether others may have shared control of the property likewise is irrelevant. Similarly, in this case, it is not determinative whether Ruiz was in the motor home when Sugar and Stark were stopped and the closet in the motor home was searched. Nor is it determinative that others had joint access or ownership of the contents of the closet in the motor home. More critical, is whether Ruiz abandoned the contents of the closet and the motor home. His testimony reveals that he had the keys to the closet on him when he was arrested, knew that another key was hidden in the exhaust fan inside the motor home, expected to meet Sugar and Stark upon their arrival in Massachusetts in the

5

motor home, and expected to continue using the motor home after the trip to Massachusetts for business and personal purposes. Thus, there is no evidence to show his abandonment of the motor home or relinquishment of control over it.

### (D) U.S. v. Powell, Cited By the Government, Is Not the Answer To This Court's Question.

The Government cites *U.S. v. Powell* as a response to this Court's question of whether Ruiz has standing to assert a Fourth Amendment challenge to a search of a locked closet in a motor home he co-owned while it was driven by his brother-in-law, Sean Stark and his friend, Christopher Sugar, from Arizona to Massachusetts. However, *Powell's* essential instruction, if any to this Court, is that the "infinite factual permutations with which courts may be faced caution against formulating bright line rules." *U.S. v. Powell,* 929 F. 2d 1190 (7th Cir. 1991). Thus, *Powell* does not create a binding test for this case and, in essence, simply states that courts must evaluate each Fourth Amendment standing case on its own set of facts and not according to a rigid and fixed rule. In that regard, *Powell,* a 7th Circuit case emanating from Wisconsin contrasts with *Mancini,* a First Circuit case decided later, identifying a number of factors to consider in determining whether a defendant has standing for Fourth Amendment purposes. Of the six *Mancini* factors, the court in *Powell* relies on only one in reaching its holding. It held that "ownership of a vehicle is largely irrelevant" and that "possessory interests" are often important. *Mancini,* 929 F.2d 1190, 1195. In construing the nature of the "possessory interest" the *Powell* court does not address whether the defendant was required to have actual rather than constructive possession. As such, the opinion leaves open that question for another court and another day. Logically, constructive and actual possession carry the same rights and obligations and the fact that

6

a person has delivered constructive possession to another should not be deemed a relinquishment of his possessory interest. Additionally, a defendant's possessory interest should not be construed as abandoned if a defendant, like here, owns a motor home and temporarily does not happen to be in it when it is stopped. Even *Powell* rejects such a bright line test.

According to *Powell,* the interest implicated by a vehicle stop is a driver's and passenger's interest in "'freedom from random, unauthorized, investigatory seizures'… 'and the interest in avoiding 'substantial anxiety.'" *Id.* Based on such reasoning, it concluded that an absent owner of the vehicle does not have the same interest and, presumably, not the same standing under the Fourth Amendment. *Powell's* analysis is flawed and overlooks other types of protected interests an absent owner may have in a "random, unauthorized and investigatory seizure." For example, an owner has an expectation that police will not tear up the seat covers of his vehicle or cause any other destruction in the course of an unwarranted search whether or not he is in possession or the vehicle. Because a motor home is tantamount to a home, a homeowner, whether the home is stationary or mobile, rented or occupied, maintains a right to be free from unwarranted government intrusion.

**Conclusion.** A bright line test to determine whether one is precluded from asserting Fourth Amendment rights has no support. The cases cited above demonstrate a broad range of situations all with the common thread that Fourth Amendment rights attach whether the person who owns a closed container places it in the attic in the workplace, on a windowsill where the window is open, with an apartment manager who places the container in a storage area on behalf of the owner, in the trunk of a rental car or

a motor home provided that the owner/co-owner maintains an expectation of privacy over it, does not abandon it and has constructive possession and ownership rights and obligations.

                                      Fabian Ruiz,
                                      By his attorney,

                                      _____/s/ Valerie S. Carter
                                      Valerie S. Carter
                                      CARTER & DOYLE LLP
                                      530 Atlantic Avenue
                                      Boston, MA   02210
                                      617-348-0525
                                      vcarter@carterdoyle.com

DATED:  October 12, 2004

CERTIFICATE OF SERVICE

    On October 12, 2004 I hereby certify that a true copy of the above document was served upon Cynthia Lie, AUSA, by fax, ECF and mail, postage prepaid.

                                        _____/s/ Valerie S. Carter
                                        Valerie S. Carter, Esq.