UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>FABIAN RUIZ )<br>_____ ) | Criminal No.: 03-CR-10362-WGY |

**RUIZ'S SENTENCING MEMORANDUM**

The defendant, Fabian Ruiz, files this Memorandum for this Court's consideration in sentencing him.

RUIZ'S SENTENCE REQUEST

Ruiz requests that this Court sentence him to time served representing 1 year and almost 7 months on the grounds set forth herein.

ARGUMENT

Under *U.S. v. Booker*, the sentencing guidelines are advisory. *U.S. v. Booker*, 543 U.S. \_\_\_ (2005). Because they are advisory this Court has the authority to sentence Ruiz to time served. The question therefore is whether this Court should exercise its authority under the facts and circumstances of this case and this defendant.

(A)  Mr. Ruiz Provided Significant, Truthful, Useful and Reliable Testimony to the USAO in Arkansas and Should Receive Credit for It.

Ruiz argues that there are significant factors supporting his request for time served, including but not limited to the fact that he provided significant testimony at a trial in Little Rock, Arkansas for the United States Government. The testimony Ruiz provided was given after he was arrested in this case and well prior to his trial herein. By letter dated December 19, 2003, Dan Stripling, the AUSA for the District of Arkansas,

1

acknowledged Ruiz's cooperation at the trial of Joseph W. Applegate in early December 2003. AUSA Stripling indicated in his letter that "Mr. Ruiz testified in an engaging, forthright manner" and "presented his testimony as competently as possible." See December 19, 2003 letter from Dan Stripling, U.S. Attorney's Office, to Valerie S. Carter. The testimony Mr. Ruiz provided was useful, truthful and reliable to the Government.

Notwithstanding of the fact that the United States Attorney's Office for the District of Arkansas sought Mr. Ruiz's testimony at the Applegate trial, the United States Attorney's Office in Massachusetts would not give him credit for it. A logical inference to be drawn by the failure of the USAO in Massachusetts to give Mr. Ruiz credit for his testimony is that the USAO in Massachusetts did not directly benefit from Mr. Ruiz's testimony in Arkansas. As a result, it had little incentive to work cooperatively with the USAO in Arkansas even if the goal of the two offices is to attack crime. The position taken by the USAO in Massachusetts undermines the efforts of law enforcement and demonstrates a selfish approach to both providing substantial assistance credit to Ruiz under the circumstances and assisting sister law enforcement agencies within the federal government. Mr. Ruiz should not be disadvantaged because of any "turf" battles by the Government. His testimony constitutes substantial assistance to the Government of the United States. This Court has the power to give Mr. Ruiz credit for his substantial assistance and useful, truthful and reliable testimony to the United States Government.

(B)  Mr. Ruiz's Sentence Should Be the Same as Torres's

Ruiz's testimony at the Applegate trial was as significant as the assistance Anibal Torres provided in Ruiz's trial and last month Torres was sentenced by this Court to time

served. For all practical purposes there is little difference in the nature, quality and scope of the cooperation by Ruiz and Torres in their respective cases. In the case of Ruiz, there is also an affirmative belief by the AUSA in Arkansas that Mr. Ruiz's testimony was truthful. Mr. Ruiz provided as much assistance to the Government in Arkansas as Torres did for the Government in this district.

The major difference between the testimony provided by Ruiz and Torres is that Torres expected to receive a reduction of his sentence as a *quid pro quo* for his cooperation in Ruiz's trial. Mr. Ruiz testified against Applegate without such a powerful benefit. He may have done so in the hope that it would benefit him in this case, but he did not do it solely for that reason. As such, a good argument can be made that his testimony in the Applegate trial was done for more pure motives than Torres had for testifying against Ruiz. His testimony against Applegate should count for something and he should not be disadvantaged because he provided testimony in a different jurisdiction. At a minimum, Ruiz's testimony at the Applegate trial demonstrates his attempt to rehabilitate himself, engage in productive behavior and learn from his mistakes.

(C) Mr. Ruiz Has Demonstrated His Rehabilitation While In Custody.

Over the year and a half that Mr. Ruiz has been detained in this case, he has used his time constructively to self-rehabilitate. He has had ample time to reflect on his behavior and of the harm he caused with the end goal of rehabilitation. The testimony he provided at the Appelgate trial is an example of his attempt to turn his life around. Even though there are no programs offered to federal inmates at Plymouth, Mr. Ruiz has availed himself of a number of outside opportunities designed to improve his life. Specifically, he participated in and received diplomas from two correspondence courses

in religion that he took in the summer and fall of 2004 from the Escuela Fuente de Luz (Fountain of Light School) located in Madison, Georgia. (Copies of the Diplomas will be provided at sentencing). He attends Bible classes at Plymouth every Tuesday evening and attends Mass every Saturday. A letter from the prison chaplain confirming his attendance will be provided at the sentencing. He has been working with the Education Coordinator at Plymouth who provides childrens' books to him so he can read them into a tape recorder for his three children. The Coordinator then sends the tape along with the books to Fabian's children. It is a unique program that very few inmates participate in and it is Mr. Ruiz's way to stay as close to his children in Arizona as possible under the circumstances. He also spends a significant amount of time composing stories for his three children, all morality tales in the nature of how to be a good person. In addition, he has applied to Ohio State, Bunker Hill Community College, Pima Community College, the University of Arizona, Boston University and the Transitional Year Program at Brandeis University to take correspondence courses and to work toward his Bachelor's Degree. Lastly, he continues to request education classes offered by Plymouth but has been rejected on the grounds that the courses are for sentenced inmates. He has eight requests for such course which he will present at sentencing. As demonstrated above, Mr. Ruiz is committed and serious about improving his life and merits a lenient sentence.

    (D) <u>Ruiz Should Be Given Acceptance of Responsibility Credit.</u>

Mr. Ruiz was not given any points in the Presentence Report for acceptance of responsibility apparently on the grounds that he exercised his right to trial. The PSR does not articulate any guideline provision or rule of law prohibiting a defendant from receiving acceptance of responsibility points if he elects trial. Mr. Ruiz believes that he

4

should be given three points for acceptance of responsibility in consideration of the specific circumstances of his case.

After the Supreme Court's decision in *Blakely*, the Government in this jurisdiction alleged "Notice of Additional Factors" in a Superseding Indictment against Mr. Ruiz one of which was his role in the offense. Mr. Ruiz consistently disputed the issue of role and represented to this Court at the Pre Trial Conference that he could not reach agreement with the Government over it. As a result, the Government, in essence, forced a trial by its failure to seriously consider the lack of evidence on the issue. It could have avoided trial preparation time had it taken the same position as the jury ultimately did when presented with the evidence on the issue. Mr. Ruiz should not be prejudiced by the Government's unproven position that he was a leader or organizer of the conspiracy.

This Court has the authority to credit him with acceptance of responsibility points. A defendant may be given consideration for acceptance of responsibility without regard to whether there is a guilty plea, a finding of guilt by the court or a jury or even the practical certainty of conviction at trial. See *U.S. v. Moskowitz,* 883 F.2d 1142 (2d Cir. 1989). Under *Moskowitz* and given the specific facts of this case, Mr. Ruiz did as much as he could to be granted acceptance of responsibility points and this Court properly may award them to him.

(E)  The Convictions in the State of Arkansas and in this District Are Related Conduct.

Mr. Ruiz entered a plea of guilty to distribution of marijuana in the State of Arkansas on October 30, 2003. The conviction against him in Arkansas should not be counted under the criminal history section as a separate conviction for which he is

assigned three criminal history points. The state marijuana conviction is relevant conduct to the instant offense because it is part of the conspiracy contained in the instant offense.

The instant offense is for a conspiracy to Distribute Marijuana and Possession with Intent to Distribute Marijuana. The instant Conspiracy dates from a "time unknown" and therefore includes the behavior of February 2003. The facts of the Arkansas distribution are nearly identical to the facts of the instant offense. The only other defendant involved in the Arkansas distribution, Trevor Teague, is also the same one involved with Mr. Ruiz in the instant offense; the drug is the same drug as the instant offense; and the date of the offense was in close temporal proximity as the offense in this case. Mr. Ruiz and Trevor Teague were traveling from Arizona to New England to deliver Marijuana in the Arkansas offense as they were in the instant offense. See *U.S. v. Thomas,* 54 F.3d 73 (2d Cir. 1995). (The Second Circuit held that defendants' state convictions for purchasing goods with the forged money orders should have been excluded from defendants' criminal history under § 4A1.2(a)(1) because they were part of the instant conspiracy. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under § 1B1.3. The state convictions involved purchases made during the conspiracy period with the forged money orders at issue in the instant case. Because the prior convictions involved some of the conduct for which defendants were convicted here, the previously imposed sentences were not prior sentences under § 4A1.2(a)(1).)

See also *U.S. v. Weiland,* 284 F.3d 878 (8th Cir. 2002). (Defendant pled guilty to charges stemming from a drug conspiracy that took place between 1996 and 1999. The government argued that defendant's 1998 conviction for marijuana possession, which was

based on a 1997 search of defendant's apartment, should have been counted in his criminal history rather than as relevant conduct to the conspiracy. The Eighth Circuit concluded that the conduct underlying the 1998 conviction was part of the same common plan or scheme as the conspiracy, and thus was properly considered relevant conduct, not a prior offense. Both offenses had temporal and geographic proximity and involved the same criminal scheme and the same types of drugs. The underlying conduct for both crimes occurred in the Dubuque area, and both were investigated by the same law enforcement officer. The conspiracy charge involved the same types of drugs as found in defendant's residence in the 1997 search and the criminal intent was similar. The 1997 search not only involved personal use drugs, but uncovered other indicia of drug dealing. Finally, some of the evidence used to support probable cause for the 1997 search warrant was also used as evidence for the conspiracy. The 1998 drug conviction was not a severable and distinct offense from 2001 conspiracy.)

See also *U.S. v. Torres,* 182 F.3d 1156 (10th Cir. 1999). (Section 4A1.2(a)(1) assigns criminal history points for each sentence previously imposed "for conduct not part of the instant offense." Note 1 says "[c]onduct that is part of the instant offense is conduct that is relevant conduct to the instant offense…" In determining whether a prior sentence is relevant conduct, some courts have asked whether the prior sentence was actually taken into account by the sentencing court in determining the total offense level. Other courts have made an independent evaluation based on factors such as the similarity, temporal proximity, and regularity of the offenses. The Tenth Circuit held that combining these two approaches was the best way to make the relevant conduct determination. The court did not take the prior sentence into account in its offense level determination. Thus,

an analysis of similarity, temporal proximity, and regularity of the offenses was necessary. The record did not contain sufficient information on these issues. Where the scope of the charged conspiracy covers (1) a temporal proximity, (2) a geographic area, and (3) a subject matter or purpose broad enough to include prior convictions, the Tenth Circuit held that the government bears the burden of proving that the prior convictions were not relevant conduct. Because the government failed to meet that burden, the district court erroneously found that defendant's two prior drug convictions were not part of the current drug conspiracy.

In *U.S. v. Hahn,* 960 F.2d 903 (9th Cir. 1992), the court set forth a similar three part test for determining whether conduct is part of a common scheme or the same course of conduct as the offense of conviction. The test includes (1) similarity of the conduct, (2) the regularity of the conduct, and (3) temporal proximity of the related conduct.

The instant offense involves the same course of conduct or a common scheme as the Arkansas conviction , i.e., Mr. Ruiz and Trevor Teague driving from Arizona to New England to deliver marijuana.  The offenses are in close temporal proximity and are separated by only ten months.  Both offenses were discovered while defendants were en route to their final destination.  Applying *Hahn*  and the other cited cases shows that the Arkansas offense is part of the same course of conduct as the instant offense.  The 50 pounds of marijuana in the Arkansas conviction should be added to the quantity involved in instant offense.  No Criminal history points should be assigned to Mr. Ruiz for the State of Arkansas conviction and he should be placed in CHC I since he has no other convictions.

(E) <u>Mr. Ruiz Is Entitled To Safety Valve Points.</u>

Mr. Ruiz avers that he is eligible for the Safety Valve. He is in CHC I, (see argument above), there is no violence involved in the offense of which he was convicted, he was not found by a jury to have played an aggravating role, and he provided the government with incriminating statements involving his conduct in this case at the Applegate trial. The U.S.Attorney in Arkansas stated that Mr. Ruiz was forthright and consistent in his testimony. He should be granted relief under the Safety Valve. The defendant's offense level should be reduced by two levels pursuant to §2D1.1(7) and §5C1.2 and he should have a TOL of 24, not including acceptance of responsibility points.

(F) <u>Mr. Ruiz's Family Asks This Court for Leniency in Sentencing Him.</u>

Mr. Ruiz, an American of Mexican descent, has a close and supportive relationship with his family and friends. It is a bond that has strengthened since his detention even though his family and friends live in Arizona. To demonstrate their commitment to helping him with his rehabilitation, the family and friends of Mr. Ruiz have expressed their support in writing addressed to this Court. Their letter is attached hereto and speaks for itself. In the letter, Mr. Ruiz's family and friends ask for leniency in the sentence imposed by this Court and pledge to remain by his side assisting him in leading a productive life.

(G) <u>If This Court Will Not Sentence Him To Time Served, He Requests Participation In a Drug Program.</u>

If this Court does not sentence Mr. Ruiz to time served, he requests that he be placed in the 500 hour program, boot camp or any rigorous drug program offered by the

9

Bureau of Prisons.  In support of his request Mr. Ruiz recognizes that, for him, even smoking the little marijuana that he did was enough to impair his judgment.  He would like to develop the skills, discipline and mental toughness to make decisions with clarity of mind and purpose.

                 Fabian Ruiz,

                 By his attorney,

                 _____/s/ Valerie S. Carter
                 Valerie S. Carter
                 CARTER & DOYLE LLP
                 530 Atlantic Avenue
                 Boston, MA  02210
                 617-348-0525
                 vcarter@carterdoyle.com

DATED:  May 3, 2005

## CERTIFICATE OF SERVICE

  I hereby certify that on  May 3, 2005 a true copy of the above document was served upon  Cynthia Lie, the attorney of record via ECF filing.

                _____/s/ Valerie S. Carter
                Valerie S. Carter, Esq.